No. 37,668

Lola McCoy, *Appellee*, v. Albert F. Weber and Charles C. Crow, Copartners, doing business as Al Char Bowl, *Appellants*.

(212 P. 2d 281)

Opinion filed December 10, 1949.

*Byron Brainerd,* of Wichita, argued the cause, *Claude I. Depew, W. E. Stanley, Lawrence Weigand, William C. Hook, Lawrence E. Curfman,* and *William C. Kandt,* all of Wichita, and *Donald C. Martindell, William D. P. Carey, Wesley E. Brown, Edwin B. Brabets, Robert J. Gilliland, John F. Hayes,* and *C. William Miller,* all of Hutchinson, were with him on the briefs for the appellants.

*Abraham Weinlood,* of Hutchinson, argued the cause, and *Don Shaffer,* of Hutchinson, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Wedell, J.: This is an appeal from a judgment in favor of the plaintiff for personal injuries suffered by her while an invitee at defendants' bowling alley in which defendants, a copartnership, also had accommodations for refreshments.

The accident was alleged to have occurred as plaintff arose from a table at which she had been seated and when her foot caught on one of the horizontal runners forming a part of the table legs. The negligence alleged was:

"a. In furnishing for the seating of customers and inviting customers to

be seated thereon, arrangements of tables and chairs involving steel runners projecting approximately one or one and one-half inches above the floor, and extending across the space over which customers must pass to enter or leave the seats, and in which arrangements the seats and tables were so close together as to cause the table top to obstruct the line of vision to the floor for persons leaving the seats, all of which constituted a hazard over which people leaving the seats would be likely to catch their feet and would cause a likelihood of tripping, so that there was an unreasonable hazard of tripping, losing balance, and falling.

"b. In failing to fasten down the tables and chairs so that they would not slip when used for support in leaving them, and in having such unfastened seats and tables so close together that it was likely and probable that people leaving the seats would have to use the seats and tables for support.

"c. In having the aforesaid arrangements on a highly polished floor so that the likelihood of seats and chairs slipping was enhanced."

In addition to the general verdict the jury answered special questions as follows:

"Q. No. 1. Did the plaintiff know or by the use of ordinary care should the plaintiff have known that the seats and tables in the defendants' place of business were not fastened to the floor? A. No. 1. No.

"Q. No. 2. Did the plaintiff take the precautions an ordinarily prudent and careful person would have taken in getting up from the table where she had been seated? A. No. 2. Yes.

"Q. No. 3. Did the plaintiff know or by the exercise of reasonable care should she have known that the legs of the table at the time she was attempting to leave the seat had runners that ran down the side from the center of the ends of the table and then extended out along the floor under the ends of the table? A. No. 3. No.

"Q. No. 4. If you find that the defendants were guilty of negligence then state in what respect the defendants were negligent. A. No. 4. An obstruction on entering or leaving booth.

"Q. No. 5. Were the defendants guilty of any negligence which was the proximate cause of plaintiff's fall and injury? A. No. 5. Yes.

"Q. No. 6. If you find for the plaintiff, then state:

"(a) How much do you allow for doctor bills? A. $179.00.

"(b) Mow much for hospital and medical bills? A. $180.00.

"(c) How much for pain and suffering? A. $1750.00.

"(d) How much for permanent injury? A. $500.00.

"Q. No. 7. Were the seats and tables in defendants' place of business substantially the same as those in general use for some period of time in similar places for similar use? A. No. 7. Yes.

"Q. No. 8. Did defendants use the usual and customary methods in polishing the floor in their place of business? A. No. 8. Yes.

"Q. No. 9. Did defendants have reason to believe that an invitee would receive any injury from the manner in which the booths and tables were installed or from the way the floor was maintained? A. No. 9. No.

"Q. No. 10. What do you find was the cause of plaintiff's fall? A. No. 10. The extension on the table leg."

The sole contention of appellants is the trial court erred in over-ruling their motion for judgment on the special findings. Did these answers compel the court to set aside the general verdict and to further render a judgment in favor of appellants? Are these answers consistently contrary to the general verdict?

It will be observed findings 1, 2 and 3 absolve appellee of negligence. That fact is not in dispute. What about the findings with respect to appellants' negligence?

Appellants contend answers 7, 8 and 9 absolve them from liability under the instructions to the jury. There is no motion for a new trial and we cannot examine the correctness or sufficiency of the instructions given. We are required to consider the findings just as they are and nothing more. It would appear findings 7, 8 and 9 do absolve or tend to absolve appellants of negligence and that they are inconsistent with a general verdict against them. On the other hand findings 4, 5 and 10 disclose the jury believed the proximate cause of appellee's injury was the specific negligence charged and found. The result is we do not have consistent special findings which are contrary to the general verdict. Considered as a whole, as they must be, the special findings are inconsistent with each other and do not compel a verdict for appellants. What then is the status of the case?

While the civil code authorizes the rendition of a judgment on special findings where they are inconsistent with the general verdict (G. S. 1935, 60-2918) the rule implies such special findings must be consistent with each other. (*Packer v. Fairmont Creamery Co.,* 158 Kan. 191, 146 P. 2d 401.) See, also, numerous other cases to the same effect collected under the above cited statute.

Consistent special findings control the general verdict when contrary thereto but when they are inconsistent with one another— some showing a right to a verdict and others showing the contrary— the case is left in the condition of really being undecided. (*Willis v. Skinner,* 89 Kan. 145, 130 Pac. 673; *Packer v. Fairmont Creamery Co.,* supra, p. 195.)

Manifestly a court cannot ignore specific separate findings of negligence which justify recovery and consider only the findings absolving a defendant of negligence and render a judgment on the latter. To do so would be tantamount to the court substituting its judgment for that of the jury and thereby denying the right of trial by jury. (*Underhill v. Motes,* 160 Kan. 679, 682, 165 P. 2d 218.)

Obviously the result in the instant case is not a satisfactory one. These findings being inconsistent with one another they leave the case in a condition of being really undecided. Under such circumstances a new trial should have been granted. (*Willis v. Skinner*, supra.) The trial court, however, did not grant a new trial on its own motion. Appellants for reasons they deem valid and concerning which we, of course, express no views, did not request a new trial. Appellants concede the sole issue they bring here is whether the trial court erred in overruling their motion for judgment *non obstante veredicto*. We think it did not.

The judgment is affirmed.