HANNAH HART *et al.* v. THE ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY.

No. 15,971.

NEGLIGENCE—*Evidence—Injury to Passenger.* The evidence failed to show that the death of a passenger who fell from a train was caused by the negligence of the railroad company.

Error from Miami district court; WINFIELD H. SHELDON, judge. Opinion filed July 3, 1909. Affirmed.

*Frank M. Sheridan, W. W. Calvin,* and *William Needles,* for the plaintiffs in error.

*W. F. Evans, I. P. Dana,* and *A. L. Berger,* for the defendant in error.

*Per Curiam:* This action was commenced by Hannah Hart and Leopold Hart, the parents of Nathan Hart, who fell from a passenger-train operated by the defendant and was killed.

The facts developed at the trial are substantially as follow: The deceased got upon the train at Kansas City, Mo. He had been a traveling salesman for about fifteen years, and was familiar with railroad travel generally, and with this train in particular. His brother was with him upon this occasion; they were going to Springfield, Mo. The train was what is known as a "full, or solid, vestibule train," which means that the platform of each coach is enclosed with a vestibule. On the train in question, when the vestibules were all closed, a person could walk with safety from one end of the train to the other in an enclosed passage-way. The deceased and his brother were seated in the middle compartment of the smoking-car. The train left Kansas City after night. Its first stop was at Paola. Soon after leaving Paola the brother, who had been asleep, discovered that the deceased was not in his seat, and a search was made for him. He could not be found. Every vestibule door was closed except one in the front end of the smoker, next to the baggage-car, which was open. The next morning the mangled, lifeless body of the deceased was found at the side of the track near Fontana. It was the custom of the railroad company to keep all vestibule doors closed while the train was between stations. Just when the deceased left his seat, and for what reason, is unknown. When, where and how his body got where it was found is not known. When, where and by whom the vestibule door was opened is mere conjecture. So far as the evidence

shows, the deceased was in the possession of all his ordinary faculties and in good health. Before the train reached Paola the deceased visited the water-tank frequently, as though feverish or thirsty. Any one familiar with a vestibule train could open a door as the one upon this train was opened. That vestibule was not lighted except as the light shone in through the glass in the closed door of the smoking-car.

Upon these facts the district court sustained a demurrer to the evidence, and the plaintiffs prosecute error.

Before the plaintiffs could recover from the defendant they must have produced testimony sufficient to establish *prima facie* that the defendant was guilty of negligence which caused the death of their son. The only act of negligence on the part of the defendant which has been suggested is that the door of the vestibule was open. But the testimony is absolutely silent as to when, where or how that door was opened. It has been urged that but two agencies can be supposed to be responsible for this—the negligent conduct of the defendant's employees, and the deceased himself. The deceased must be excluded, because he can not be imputed with the intent to commit suicide, and then nothing remains but the negligence of the defendant. The evidence, however, does not suggest these conditions exclusively. The deceased made such frequent visits to the water-tank as to attract the attention of his brother, who testified to it. This, being in midwinter, would justify the assumption that the deceased was uncomfortably warm, perhaps feverish, and to obtain relief from the warm, stifling air which is often found in a smoking-car at night he may have gone to the vestibule in question, and in opening the door to get fresh air lost his balance by a sudden lurch of the train and accidentally fell out. This, of course, is mere conjecture, and only serves to show the extent to which specula-

tion may run, where there are no facts by which it is. guided or limited.

The evidence here presents no facts upon which it can be safely assumed that the deceased lost his life because of any negligence upon the part of the defendant, and therefore the judgment of the district court is affirmed.